IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEGAN REICHERT, on behalf of himself and those similarly situated, | |
| **Plaintiff,** | |
| v. | 1:16-cv-4575-WSD |
| HOOVER FOODS, INC., a Georgia Corporation, | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Kegan Reichert's ("Reichert")

Motion for Conditional Certification [29].

## I.   BACKGROUND

This is a putative collective action brought by Plaintiff against his former

employer, Hoover Foods, Inc. ("Hoover" or "Defendant").  On December 13,

2016, Reichert filed his Complaint [1] "on behalf of himself and all other similarly

situated assistant managers who worked for Defendant at their Wendy's locations

throughout the Southeastern United States."  (Compl. ¶ 1).  Reichert asserts claims

for overtime compensation under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 et seq., and seeks liquidated damages and attorney's fees.

To support his Motion for Conditional Certification, Plaintiff submits his deposition testimony [29-6] and [30-1], the deposition testimony of Hoover's Rule 30(b)(6) representative, Glenn Varner ("Varner") [29-5] and [30-2], Defendants Interrogatory Responses [29-2], and the declarations of two opt-in plaintiffs, Paulette Clay ("Clay") [29-7] and Colette Mazzuca ("Mazzuca") [29-8] (together, "Opt-in Plaintiffs" or "Declarants").

Plaintiff maintains that Defendant Hoover operates around 44 Wendy's restaurant franchises. ([30-2] Varner Depo. at 9). Plaintiff testified that Defendant employed him as an assistant manager from July 8, 2015, through August 24, 2016. ([30-1] Reichert Depo at 38, 112, 114). Citing Defendant's interrogatory response, Plaintiff asserts that he is among approximately 270 other current and former assistant managers employed by Defendant since January 1, 2014. ([29-2] at 7-15). Defendant classified Plaintiff, and all other assistant managers, as exempt employees. (Id. at 3, 18). Defendant paid Plaintiff a salaried rate of $455 per week and did not pay overtime. (Id. at 3).

Plaintiff testified that he worked for Defendant at five different locations as an assistant manager. ([30-1] at 25-28). Varner testified that Defendant worked to operate each of its locations in a uniform fashion. ([30-2] at 33). According to Varner, the general duties of an assistant manager were the same at all of

2

Defendant's locations.  (Id. at 32).  Defendant maintains that all of Defendant's assistant managers are paid a salary and bonuses.  (Id. at 22).  Varner testified that a normal schedule for assistant managers was five, 10-hour shifts each week.

Declarant Clay states that she worked at Defendant's Woodstock, Georgia, location as an assistant manager for several years before leaving in May 2016. ([29-7] ¶ 4).  Clay asserts that "[a]ssistant managers are required to work at least fifty hours per week because we typically were scheduled for five 10-hour shifts." (Id. ¶ 6).  Clay also states that Defendant did not have a sick time policy and that she "understood the policy to be that if you missed a day of work for illness you wouldn't get paid."  (Id. ¶ 7).  Clay maintains that she "worked with many other assistant managers and we all did the same job duties and were paid the same way. We were all treated the same and the same policies applied to all of us."  (Id. ¶ 8).

Declarant Mazzuca states that she worked at Defendant's Woodstock, Georgia, location as a general manager from October 2012 to February 2016. ([29-8] ¶ 4).  Mazzuca asserts that "[a]ll managers, including assistant managers, were scheduled to work each week for at least fifty hours."  (Id. ¶ 6).  Mazzuca further states that Defendant "did not have a sick time policy" and that the "rule for all managers, including assistant managers was if you did not work one day you were docked a day's pay, regardless of why you were out."  (Id. ¶ 7).

Plaintiff claims that Defendant willfully "misclassified" assistant managers as exempt employees and failed to compensate them for overtime.  (Compl. ¶¶ 22-27).  Plaintiff asserts that Defendant's assistant managers are not exempt employees because they "had no ability to hire or fire employees, [and] were not involved in interviewing or other aspects of firing/hiring."  (Compl. ¶ 18).  Plaintiff also claims that Defendant's assistant managers are not exempt employees because Defendant docked their pay for absences, including for illness, and effectively did not pay assistant managers on a salary basis.  (Comp. ¶ 18).

Defendant asserts that its assistant managers are properly classified as exempt employees because their role "consisted of managing the restaurant . . . including supervising and directing the work of multiple employees (known as 'crew members')."  ([29-2] at 4).  Defendant maintains that its assistant managers perform a number of supervisory tasks, including crew member training, creation of the work schedule for crew members, assigning each crew member to their specific role in the restaurant on a daily basis, evaluating and conducting performance reviews of crew members, disciplining crew members, and interviewing potential crew member candidates.  ([29-2] at 5).  Defendant asserts that "it had a policy of compensating its assistant managers, including Plaintiff, for sick time that was supported by medical documentation, such as a doctor's note"

and that it "requested, but did not require" assistant managers to make up undocumented time missed.  ([29-2] at 18).  Nevertheless, Varner testified that Defendant "went back [the] past three years and paid anybody that had any time docked," including all assistant managers.  ([30-2] at 80-83).  Varner further testified that, with respect to its sick time policy and compensation for previously docked pay, Defendant endeavors to "treat everybody the same.  We don't have different rules for general managers and assistant managers.  Everybody is the same."  (<u>Id.</u> at 88).

On May 5, 2017, Plaintiff moved to conditionally certify a class of "[a]ll assistant managers who worked at any of Hoover's Wendy's locations from [three years prior to Order granting Notice] to the present."  ([29-1] at 3).  Plaintiff also seeks an order requiring Defendant to produce contact information of potential class members, and authorizing Plaintiff's proposed Notice of Lawsuit ("Notice") [29-3].  Defendant opposes conditional certification.

## II.    DISCUSSION

### A.    <u>Legal Standard to Conditionally Certify a Collective Action</u>

The FLSA requires covered employers to pay non-exempt employees who work more than forty hours in a week an overtime rate of one and one-half times the employee's regular pay rate for all hours worked that exceed forty.  29 U.S.C.

§ 207(a).  Section 216(b) imposes liability on employers for violations of

Section 207 and authorizes employees to bring lawsuits to recover that liability.

Employees may sue individually or they may bring a collective action on behalf of

themselves and other "similarly situated" employees:

> An action . . . may be maintained against any employer (including a
> public agency) in any Federal or State court of competent jurisdiction
> by any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.  No employee
> shall be a party plaintiff to any such action unless he gives his consent
> in writing to become such a party and such consent is filed in the court
> in which such action is brought.

Id. § 216(b).  A collective action under Section 216(b) requires potential plaintiffs

to affirmatively opt into the lawsuit.  Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d

1208, 1216 (11th Cir. 2001).  "The decision to create an opt-in class under § 216(b)

. . . remains soundly within the discretion of the district court."  Id. at 1219.[1]

The Eleventh Circuit sets out a two-step process to certify a collective action

under Section 216(b).  Id.  In the initial, so-called "notice stage," the question is

whether notice of the action should be given to potential class members.  Id. at

1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213 (5th Cir. 1995)).

Relying on the pleadings and affidavits submitted by the parties, the Court applies

---

[1]  Hipp involved a collective action under the Age Discrimination and
Employment Act of 1967.  That statute incorporates the FLSA's collective action
provision, and Hipp therefore applies in both contexts.  Morgan v. Family Dollar
Stores, Inc., 551 F.3d 1233, 1259 n.37 (11th Cir. 2008).

a "fairly lenient standard" that "typically results in 'conditional certification' of a representative class." Id. (quoting Mooney, 54 F.3d at 1213-14).  Whether notice shall be given also focuses on whether there are other employees who would desire to opt-in, and who are "similarly situated" to plaintiffs.  See Dyback v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Plaintiffs must show there are other employees who wish to opt in and that these other employees are similarly situated.  See Delano v. MasTec, Inc., No. 8:10-cv-320-T-27MAP, 2011 WL 2173864, at *4 (M.D. Fla. June 2, 2011).  If the Court conditionally certifies a class, potential class members receive notice and an opportunity to opt into the class and the parties complete discovery.  Hipp, 252 F.3d at 1218 (quoting Mooney, 54 F.3d at 1213-14).

The second stage is optional and usually occurs if the defendant moves for "decertification" after the completion of all or most discovery in the case.  Hipp, 252 F.3d at 1218 (quoting Mooney, 54 F.3d at 1213-14).  Based on the more extensive factual record, the court makes a factual determination whether claimants are similarly situated.  Id. (quoting Mooney, 54 F.3d at 1213-14).  If they are, the collective action proceeds on the merits.  If not, the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs proceed on their individual claims.  Id. (quoting Mooney, 54 F.3d at 1213-14).

B.    Analysis

The Court here considers whether conditional certification is appropriate.  In doing so, the Court must determine if there are other employees who desire to opt-in, and who are "similarly situated" to the plaintiff.  See Dyback v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991).  When Plaintiff filed this motion, four individuals had already opted into this litigation, Declarant Clay [19], Declarant Mazzuca [16], Tess Lilly [15], and Pauline Alexander [28].[2] Defendant acknowledges that "Plaintiff can properly demonstrate three (3) total individuals to qualify under his proposed putative class."  ([30] at 9-10).  This shows that current or former employees seek to be members of a collective action, and the desire to opt-in criteria is met.

Plaintiff next bears the burden of demonstrating a reasonable basis to conclude that he is similarly situated to the members of the proposed collective action.  Cf. Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996). Plaintiff "may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  Id. Plaintiffs are, at this stage, required only to show that they and the potential class

---

[2]     A fifth, Eric Yazurlo, subsequently opted-in [44].

members are similarly, not identically, situated.  Id. at 1096.  They are not required to show they were subjected to a common or unified policy, plan or scheme, see id. at 1095, although this is a common and effective way to satisfy the "similarly situated" requirement.  Plaintiffs "must [at least] make some rudimentary showing of commonality between the basis for [their] claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." Scott v. Heartland Home Fin., Inc., No. 1:05-cv-2812-TWT, 2006 WL 1209813, at *6 (N.D. Ga. May 3, 2006) (quoting Marsh v. Butler Cnty. Sch. Sys., 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003)); see also Barron v. Henry Cnty. Sch. Sys., 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) ("[W]hile a unified policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency.").

Plaintiff seeks to represent "[a]ll assistant managers who worked at any of Hoover's Wendy's locations" during the past three years.  ([29-1] at 3).  Plaintiff and Opt-in Plaintiff Clay worked for Defendant as assistant managers and received a salary plus bonuses.[3]  Clay worked at a Wendy's in Woodstock, Georgia.

---

[3]     Defendant challenges whether Declarants Mazzuca and Clay were assistant managers and properly considered part of the putative class.  ([30] at 9).  That Declarant Mazzuca states she was a general manager raises concerns about

Plaintiff worked at five different Wendy's locations in Georgia.  ([30-1] at 28).

Plaintiff, Clay, and Mazzuca all state that Defendant required assistant managers to

work five, 10-hour shifts each week but were not paid overtime.  All state that

Defendant would dock pay for a missed work day, including for illness, resulting

in assistant managers receiving less than their full salary.  Defendant maintains that

it sought to treat all managers across all of its locations the same and uniformly

sought to compensate its managers for previously docked pay.  Plaintiff's

testimony, Declarant's statements, and the testimony of Defendant's Rule 30(b)(6)

designee, support that assistant managers at Defendant's Wendy's locations were

whether she belongs in the putative class.  But her statements are probative of the
circumstances and interests of assistant managers because Varner acknowledged "I
just treat everybody the same.  We don't have different rules for general managers
and assistant managers.  Everybody is the same."  ([30-2] at 88).  As to Declarant
Clay, she states she was an assistant manager.  Defendant's characterization of her
as a "co-manager" raises a factual issue.  At the notice stage, however, all that is
required is "detailed allegations supported by affidavits which successfully engage
defendants' affidavits to the contrary."  Grayson, 79 F.3d at 1097 (internal
quotation and citation omitted).  The Court declines to resolve factual issues or
make credibility determinations at this early stage of the litigation.  See id. at n. 17
(plaintiffs' allegations were sufficient to warrant conditional class certification
despite defendant's substantial allegations to the contrary supported by affidavits
and depositions); Scott, 2006 WL 1209813, at *2 (declining to resolve factual
issues or make credibility determinations at this stage) (citing Severtson v. Phillips
Beverage Co., 141 F.R.D. 276, 279 (D. Minn. 1992) & Camper v. Home Quality
Mgmt. Inc., 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate
the appropriateness of court facilitated notice.")); White v. Osmose, Inc.,
204 F. Supp. 2d 1309, 1317-18 (M.D. Ala. 2002) (considering contradictory
evidence submitted by employer but finding plaintiffs adequately demonstrated the
existence of similarly-situated aggrieved individuals).

subject to a common practice of being required to work in excess of forty hours per week without additional compensation and were subject to having pay docked for missed work days, including illness.

In opposing conditional certification, Defendant argues that "class treatment is inappropriate because the primary allegations against Hoover for making improper deductions are highly individualized to the specific employee whose salary was alleged to have been improperly deducted."  ([30] at 7-8).  Defendant's arguments, however, go to the merits of the underlying claims and the suitability of allowing the case ultimately to proceed as a collective action, rather than an individual action on behalf of Plaintiff.  These issues are more appropriately considered during the second, or motion to decertify, stage of the certification process.  At the conditional certification stage, "[t]he focus of this inquiry . . . is not on whether there has been an actual violation of the law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated . . . . [A] court adjudicating a motion to authorize a collective action need not evaluate the merits of plaintiffs' claims in order to determine whether a similarly situated group exists."  Kreher v. City of Atlanta, No. 1:04-cv-2651-WSD, 2006 WL 739572, at *4 (N.D. Ga. Mar. 20, 2006) (quoting Young v. Cooper Cameron Corp.,

229 F.R.D. 50, 54-55 (S.D.N.Y. 2005)).  The appropriate time to address issues of liability and individual differences between putative class members is after the completion of discovery and during the second stage of the certification determination.  See id. at n.3; see also Scott, 2006 WL 1209813, at *3 ("[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage."); Riddle v. Suntrust Bank, No. 1:08-cv-1411-RWS, 2009 WL 3148768, at *2-3 (N.D. Ga. Sept. 29, 2009) (collecting cases).

The evidence submitted at this stage supports Plaintiff's allegation that assistant managers at Defendant's Wendy's locations shared similar duties and were subjected to uniform training, operation, and pay policies.  The evidence supports Plaintiff's allegations that Defendant:  (1) classified assistant managers at all its Wendy's locations as exempt employees; (2) required them to work more than 40 hours per week; (3) did not compensate them for hours worked in excess of 40 hours per week; and (4) docked assistant manager pay for absences, including for illness.  Plaintiff has submitted evidence sufficient to show at the notice stage that Plaintiff is similarly situated to members of the proposed class.[4]

---

[4]     Plaintiff also contends that "at minimum the assistant managers in training cannot have been classified as exempt and are owed overtime compensation during that [training] time period."  ([29-1] at 2).  Having ruled that conditional

The Court grants Plaintiff's motion for conditional certification.

C.    Class Period

Plaintiff asserts that the proposed class should include assistant managers employed by Hoover at its Wendy's locations since three years before the date of this order.  Defendant maintains that the period should be only two years because the FLSA provides for a two-year state of limitations for a claim for overtime wages unless the employer's conduct is willful.  ([30] at 10-11).  Defendant argues that "Plaintiff offers **no evidence** to substantiate his claim that Hoover knew its conduct violated the FLSA or that it showed reckless disregard for whether it did." ([30] at 11).

The Court declines to engage in a fact-intensive willfulness inquiry at this stage of the proceedings.  The willfulness allegations in Plaintiff's Complaint, along with the testimony and statements offered in support of this motion, are sufficient to support Plaintiff's request for a three-year class period at this stage. See Abdul- Rasheed v. KableLink Communications, LLC, 2013 WL 5954785, *3-

---

certification is warranted based on Plaintiff's claims of improperly docked pay, the Court need not address this alternative argument for conditional certification. Defendant argues that "[c]lass treatment is further unwarranted given that not all assistant managers necessarily underwent the same training regimen as Plaintiff Reichert," particularly those trained by Hoover's predecessor.  ([30] at 8).  Any individual differences in training can be addressed during the second stage of the certification determination.  See id. at n.3

4 (M.D. Fla. Nov. 7, 2013) ("The Court wants to make clear, however, that it is not ruling that the alleged FLSA violations were willful and/or that a three-year limitations period is warranted.  Instead, the Court is simply authorizing notice to class members that performed work for Defendants in Florida within the last three years.  Defendants may raise its argument regarding the appropriate limitations period in a motion for decertification or a motion for summary judgment.").

The Court conditionally certifies the class as:  "All assistant managers who worked at any of Hoover's Wendy's locations from November 21, 2014, to the present."  Having carefully reviewed Plaintiff's proposed Notice [29-3], and noting that Defendant has no objection other than to the class period, the Court approves the Notice in the form attached as Exhibit A to this Order.

D.    Notice

The purpose of conditionally certifying an FLSA collective action is to facilitate notice to potential opt-in plaintiffs.  See Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169-70 (1989).  District courts have discretion to authorize and oversee the notice process, including authorizing discovery about potential plaintiffs and monitoring the preparation and distribution of the notice to ensure that it is timely, accurate, and informative.  See id. at 171-72; Maddow v. Proctor & Gamble Co., 107 F.3d 846, 854 (11th Cir. 1997).

14

Plaintiff "requests this Court allow Plaintiff to notify the potential class members by mail and e-mail, and to order Hoover to post the Notice at each of its Wendy's locations." ([29-1] at 15). The Defendant does not object to this request and the Court approves.

Plaintiff further moves to require Defendant to produce information about potential class members, including their full names, last-known addresses, email addresses, dates of employment, and dates of birth. ([29-1 at 17). The Defendant does not object to this request. This information is within Defendant's possession, its production to Plaintiff will facilitate issuance of the notice, and it is required to be produced by Defendant.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Conditional Certification [29] is **GRANTED**.

**IT IS FURTHER ORDERED** that Notice shall be given to potential class members in the form attached to this Order.

**IT IS FURTHER ORDERED** that Defendant shall, on or before December 8, 2017, provide to Plaintiff a list of persons employed by Defendant as assistant managers at any of its Wendy's locations since November 21, 2014. For

15

these identified employees, Defendant shall provide their full name, last known

address, telephone number, e-mail address, date of employment, and date of birth.


    **SO ORDERED** this 21st day of November, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **KEGAN REICHERT, on behalf of himself and those similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **1:16-cv-4575-WSD** |
| **HOOVER FOODS, INC., a Georgia Corporation,** | |
| **Defendant.** | |

## NOTICE OF LAWSUIT WITH OPPORTUNITY TO JOIN

**This is a Court-Authorized Class Notice and is Not a Solicitation from a Lawyer. The Court Has Made No Findings as to the Merits of the Case at this Time.**

**If you are or were an <u>Assistant Manager</u> at any time from November 21, 2017, to the present at any of Hoover Foods' Wendy's locations, a collective action lawsuit may affect your rights.**

- Kegan Reichert ("Plaintiff"), a former Assistant Manager at several of Hoover Foods' Wendy's locations outside Atlanta, Georgia, has sued Hoover Foods in Federal Court in Atlanta, Georgia.  Plaintiff alleges that Hoover Foods misclassified him and all other Assistant Managers as "exempt" employees and failed to pay Assistant Managers overtime compensation for overtime hours worked.  Plaintiff alleges that Hoover Foods violated the Fair Labor Standards Act (the "overtime law") by this pay practice.  To date, five (5) total individuals have joined this lawsuit.

- Hoover Foods denies the allegations above and maintains that its policies and practices comply with the Fair Labor Standards Act.

- The Court has permitted Plaintiff to send this Notice to all Assistant Managers who are currently employed with Hoover Foods at one of their Wendy's locations or were employed at any time from November 21, 2014, to the present, so that they may decide whether to "opt-in" to, or join, this lawsuit to assert their legal rights.

- The Court has not yet decided whether Hoover Foods has done anything wrong and has not decided whether this case will proceed to trial.  There is no money available now and no guarantees that there will be. However, you have a choice to assert your legal rights in this case.

| YOUR LEGAL RIGHTS & OPTIONS | |
| --- | --- |
| **Do Nothing** | **Do Nothing.  Lose Nothing (except resulting from the passage of time).**  By doing nothing, you retain your legal rights to bring a separate suit against Hoover Foods (within the applicable statute of limitations period, which is normally two or three years) for allegedly unpaid overtime compensation.  If money or benefits are later awarded in this case, you will not share in them. |
| **Ask to Be Included** | **Complete Consent to Become Opt-in Plaintiff Form.**  By "opting in," you gain the possibility of receiving money or benefits that may result from a trial or settlement, but you give up your right to separately sue Hoover Foods for the same legal claims brought in this lawsuit. |
| **Effect of Joining Suit** | If you choose to join this lawsuit, you will be bound by the judgment.  While the suit is pending, you may be required to provide information, sit for depositions, and testify in court.  You will not be required to pay attorney's fees directly. |
| **Legal Representation if You Join** | If you choose to join in the lawsuit, you will be represented by the Representative Plaintiff through his attorneys as counsel for the class. |

Your options are included in this Notice.  To opt-in, you must complete the Consent to Become Opt-in Plaintiff Form and forward it to the attorney designated in the Form on or before January 5, 2018. If you have any questions or concerns, please contact:

2

**C. Ryan Morgan, Esquire**
Morgan & Morgan, P.A.
20 N. Orange Ave., Ste. 1400
Orlando, FL 32802-4979
Telephone: (407) 418-2069
Facsimile: (407) 245-3401
rmorgan@forthepeople.com

The law prohibits anyone from discriminating or retaliating against you for taking part in this case.  If you believe that you have been penalized, disciplined, punished, threatened, intimidated, or discriminated against in any way as a result of your receiving this notification, your considering whether to complete and submit the Consent to Become Opt-In Plaintiff Form, or your having submitted the Consent to Become Opt-In Plaintiff Form, you may contact a lawyer of your choice.

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT, HONORABLE WILLIAM S. DUFFEY, JR., DISTRICT JUDGE. THE COURT TAKES <u>NO POSITION</u> REGARDING THE MERITS OF THE PLAINTIFF'S CLAIMS OR OF HOOVER'S DEFENSES.**